**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAYMOND HILL,<br><br>          Plaintiff,<br><br>          v.<br><br>WUXI BIOLOGICS USA LLC,<br><br>          Defendant. | Civil Action No. 23-20218 (MAS) (JBD)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

      This matter comes before the Court on Defendant WuXi Biologics USA LLC's ("Defendant") Motion to Dismiss (ECF No. 28) Plaintiff Raymond Hill's ("Plaintiff") Amended Complaint ("FAC") (ECF No. 11)[1] pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] Plaintiff opposed (ECF No. 30), and Defendant replied (ECF No. 31).[3] The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, the Court grants Defendant's Motion to Dismiss.

---

[1] Plaintiff filed the FAC twice on the docket. (*See* ECF Nos. 11, 12.) For the purposes of this Memorandum Opinion, the Court considers ECF No. 11 as the operative amended complaint.

[2] All references hereinafter to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

[3] Defendant submitted duplicate replies. (*See* ECF Nos. 31, 32.) The Court considers ECF No. 31 as Defendant's reply.

I.   BACKGROUND[4]

A.   Factual Background

Plaintiff, an African American and practicing Muslim, was employed by Defendant as a Warehouse Technician beginning on or about February 14, 2022. (FAC ¶¶ 20-22, ECF No. 11.) In or about March 2022, after observing Plaintiff going to the restroom during breaks to pray, Warehouse Lead Joseph McDowell ("McDowell") made comments to Plaintiff, including statements such as "go back to your own country," "Muslims don't belong here," "we need a wall for Muslims just like the Mexican wall," and the use of the racial slur "n-word," or words to that effect. (*Id.* ¶ 23.) In response, Plaintiff reported McDowell's comments to Kaitlyn Lacerte ("Lacerte") in Human Resources. (*Id.* ¶ 24.) Lacerte did not follow up with Plaintiff or address his complaints. (*Id.* ¶ 25.) Moreover, Defendant did not investigate or "remediate" McDowell's treatment of Plaintiff. (*Id.* ¶ 26.)

In or about April 2022, Plaintiff suffered serious injuries from a car accident, including a herniated disk. (*Id.* ¶ 27.) Plaintiff thereafter reached out to Lacerte to request short term disability leave, which Lacerte approved. (*Id.* ¶¶ 28-29.) Plaintiff also submitted a claim for disability benefits through the State of New Jersey Department of Labor and Workforce Development. (*Id.* ¶ 30.) While on short-term disability leave, Plaintiff suffered an injury to his arm that required surgery, which was scheduled for June 30, 2022. (*Id.* ¶ 31.) On or about June 20, 2022, Plaintiff returned to work in person. (*Id.* ¶ 35.) That same day, Plaintiff requested accommodations to work remotely from his supervisor Jeremy Krider ("Krider"), due to his upcoming surgery and additional doctor appointments. (*Id.* ¶ 36.) Krider informed Plaintiff that he could work remotely, which he

---

[4] For the purpose of considering the instant motion, the Court accepts all factual allegations in the FAC as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

did from on or about June 21, 2022, until on or about June 27, 2022. (*Id.* ¶¶ 37-38.) Plaintiff went to his doctor on or about June 28, 2022, and June 29, 2022. (*Id.* ¶ 39.) On or about June 30, 2022, Krider asked Plaintiff to come into the office in-person. (*Id.* ¶ 40.) Plaintiff went to Krider's office as directed, and during a meeting with Krider, Peggy LNU ("Peggy"), Lacerte, and Human Resources Partner Rachel Fraiser ("Fraiser"), Plaintiff was terminated for alleged misconduct. (*Id.* ¶¶ 42-44.)

### B. Procedural Background

#### 1. *Plaintiff's EEOC Charge*

Plaintiff filed an administrative charge with the U.S. Equal Employment Opportunity Commission ("EEOC") against Defendant, asserting claims of disability, race, and religious discrimination and retaliation. (FAC ¶¶ 13-14.) On June 12, 2023, the EEOC issued a Dismissal and Notice of Rights (the "right-to-sue" notice) relative to Plaintiff's EEOC charge. (FAC ¶ 15; Mot. to Dismiss, Ex. 1, ECF No. 28-1.) The notice informed Plaintiff that if he wished to file a lawsuit against the respondent in court, that lawsuit "must be filed WITHIN 90 DAYS of [his] receipt of this notice." (Mot. to Dismiss, Ex. 1, 2.)

#### 2. *The Complaint*

Plaintiff filed a complaint on September 11, 2023 (the "Complaint"), against APP-TEC INCORPORATED ("APP-TEC"). (Compl. ¶ 3, ECF No. 1.) The Complaint asserted various claims for employment discrimination and retaliation that Plaintiff alleged to have occurred between March 2022 and June 30, 2022. (Compl. ¶¶ 22-78.) The Court issued a summons for APP-TEC on September 12, 2023. (Summons, ECF No. 2.) Plaintiff failed to properly serve APP-TEC. (*See* Affs. of Non-service, ECF No. 4, at 1-3.)

On January 26, 2024, the Court entered a Notice of Call for Dismissal pursuant to Rule 4(m) notifying Plaintiff that the case would be dismissed on February 9, 2024, unless Plaintiff filed proof of service or demonstrated good cause as to why the action should not be dismissed. (Notice of Call for Dismissal, ECF No. 3.) Thereafter, on February 1, 2024, Plaintiff attempted to serve the Complaint on APP-TEC at a location in Philadelphia that process server's affidavit of service describes as a usual place of business of "WuXi App Tec." (Summons 1, ECF No. 5.) The Court withdrew the Notice of Call for Dismissal on February 21, 2024. (Clerk's Note.)

On March 5, 2024, Plaintiff requested that the Clerk enter a default against Defendant APP-TEC for failure to plead or otherwise defend under Rule 55(a). (Req. for Default, ECF No. 6.) Plaintiff explained that Plaintiff served the named entity, APP-TEC, on February 1, 2024, when Plaintiff's process server left a copy of the Complaint and summons with an employee of WuXi App Tec. (Decl. in Support of Req. for Default ¶ 2, ECF No. 6-1.) On March 6, 2024, the Clerk entered a Clerk's default against APP-TEC and the next day, Plaintiff moved for default judgment and filed a supporting declaration of counsel again asserting Plaintiff had effectuated proper service on APP-TEC. (Mot. for Default J., ECF No. 7; Decl., ECF No. 7-1.)

On March 29, 2024, counsel for WuXi AppTec, Inc. filed correspondence explaining that his client never employed Plaintiff and had never been named as a defendant or served with process in this case. (Paul C. Lantis Correspondence, ECF No. 8 ("I write to alert the Court that WuXi AppTec, Inc. never employed Raymond Hill and that WuXi AppTec, Inc. is not and has never been affiliated in any way with App Tec Incorporated. WuXi AppTec, Inc. is not a party and has not been served.").) Subsequently, Plaintiff's counsel filed correspondence on April 1, 2024, stating that, after conferring "with the named Defendant's counsel as well as counsel for the other entity served," Plaintiff "realized that the incorrect entity was identified and served." (David Koller

4

Correspondence, ECF No. 9.) Plaintiff's counsel informed the Court that Plaintiff intended to file an amended complaint "to reflect the correct entity as Defendant which is WUXI BIOLOGICS USA LLC with an address at 2540 Executive Drive, Saint Paul, MN 55120" and requested "to withdraw [Plaintiff's] Motion for Default Judgment." (*Id.*) This Court granted Plaintiff's request on April 2, 2024. (Letter Order, ECF No. 10.) The Court subsequently terminated APP-TEC from the action.

### 3.   *The Amended Complaint*

Plaintiff filed the FAC on April 8, 2024, naming WuXi Biologics USA LLC as the defendant. (*See generally* FAC.) The FAC asserts nine causes of action: (1) disability discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA") (Count One); (2) race discrimination in violation of the Civil Rights Act of 1964 ("CRA") (Count Two); (3) religious discrimination in violation of the CRA (Count Three); (4) retaliation in violation of the ADA (Count Four); (5) retaliation in violation of the CRA (Count Five); (6) disability discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD") (Count Six); (7) race discrimination in violation of the NJLAD (Count Seven); (8) religious discrimination in violation of the NJLAD (Count Eight); and (9) retaliation in violation of the NJLAD (Count Nine). (FAC ¶¶ 49-132.)

On August 7, 2024, this Court entered a second Notice of Call for Dismissal. (Notice of Call for Dismissal, ECF No. 13.) Plaintiff's counsel subsequently filed a declaration stating that Plaintiff effectuated service of the Complaint on APP-TEC on February 1, 2024, that Plaintiff's counsel had "requested that Wuxi Biologics USA LLC waive service via letter sent certified mail on or about May 16, 2024," but Defendant "declined to waive service," and that Plaintiff served Defendant on August 9, 2024. (Decl. of David M. Koller ¶¶ 2-3, 8-10, ECF No. 15.)

Defendant's counsel filed correspondence on September 5, 2024, asserting that it had not been served and requesting that the Court dismiss the case for failure to prosecute. (Deanna Olivero Correspondence, ECF No. 16 at 1.) In the correspondence, Defendant's counsel explained that Defendant is "an entirely separate and distinct company from WuXi AppTec, Inc.[,]" and that its primary business address in New Jersey and the address of its registered agent was readily available to Plaintiff." (*Id.*) Defendant's counsel contended that, as far as Defendant was aware, Plaintiff never tried to deliver the FAC to either of Defendant's registered addresses in New Jersey, but that it became informally aware of the FAC after Plaintiff mailed it to an address in Minnesota, where it does not do business. (*Id.* at 3, 5.) In the correspondence, Defendant's counsel claimed to make several phone calls to Plaintiff's counsel, which went unanswered. (*Id.* at 3.) Defendant's Counsel also attached a July 20, 2024, letter to Plaintiff's counsel informing Plaintiff that Defendant does not have a place of business in Minnesota. (Ex. 3 to Deanna Olivero Correspondence, ECF No. 16-1.)

Pursuant to the Court's December 6, 2024, Order requiring a response as to the issue of service (Text Order, ECF No. 17), Plaintiff filed correspondence responding that "there were multiple entities that could have potentially been involved in this matter and it [was] not an issue of Plaintiff's failure to act with diligence or good faith to serve the correct entity[,]" and referenced correspondence addressed to Plaintiff from the New Jersey Department of Labor and Workforce Development dated June 21, 2022 that listed Defendant's address as being in Minnesota as reason for the confusion (David Koller Second Correspondence and Attachs., ECF Nos. 18, 18-1, 18-2, 18-3).

The Court held a status conference with the parties on January 28, 2025, and thereafter entered an order extending Plaintiff's deadline to effect service of process on Defendant to fourteen

days from the date of the Order. (Text Order, ECF No. 24.) Defendant waived service of the FAC on January 29, 2025. (Waiver of Service, ECF No. 25.)

## II.    LEGAL STANDARD

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III.     DISCUSSION

Defendant makes five arguments in support of dismissing Plaintiff's FAC: (1) both Plaintiff's Complaint and FAC are untimely; (2) Plaintiff fails to sufficiently allege that he is a "qualified individual with a disability" as defined by the ADA; (3) Plaintiff's claims of race and religious discrimination are conclusory and insufficient to state a claim; (4) Plaintiff fails to provide specific actions or statements by Defendant to indicate a retaliatory motive; and (5) Plaintiff's claims under the NJLAD suffer the same deficiencies as the federal claims. (*See generally* Def.'s Moving Br.) The Court addresses each argument in turn.

### A.     Timeliness of Plaintiff's Complaints

#### *1.     The Complaint*

As an initial matter, the Court addresses Defendant's argument that the FAC should be dismissed because Plaintiff filed the Complaint ninety-one days after receiving his EEOC Determination and Notice of Rights in the administrative proceeding on his EEOC charge. (*Id.* at 11.)

An individual alleging a violation of the ADA in a civil action must bring the civil action within 90 days of both the dismissal and notice of the dismissal to the aggrieved of the charge of discrimination by the EEOC. *See Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103, 108 (3d Cir. 2003). Under Rule 6, when the time for filing is stated in days or a longer unit of time and the last day is a Saturday, Sunday, or legal holiday, the period will continue to run until the end of the next day that is not a Saturday, Sunday or legal holiday. *See* Fed. R. Civ. P. 6(a)(1)(C). The Third Circuit applies Rule 6 to the 90-day time period for filing a complaint following the dismissal of a charge from the EEOC and receiving the right-to-sue notice. *See, e.g., Lewis v. Postmaster Gen. of U.S.*, No. 21-2958, 2022 WL 109007, at *1, 1 n.3 (3d Cir. Jan. 12, 2022) (finding that because the 90-

day timeline ended on Sunday, the plaintiff had until Monday to file the complaint). Here, Plaintiff received his right to sue notice on June 12, 2023. (FAC ¶ 15.) Ninety days after June 12, 2023, was September 10, 2023, which was a Sunday. Thus, under Rule 6, Plaintiff had until Monday, September 11, 2023, to file his complaint, which he did. The Court therefore finds that Plaintiff's Complaint was timely filed.

### 2. *First Amended Complaint*

The Court next addresses Defendant's argument that because Plaintiff failed to name Defendant as a party until he filed the FAC—which was 301 days after he received the EEOC notice of rights—and did not provide notice or attempt service upon Defendant until long after the Complaint was filed, the FAC does not relate back to the original Complaint. (*See* Def.'s Moving Br., at 11-12.)

Regarding the timeliness of filing an amended complaint, Rule 15(c) permits an amendment to relate back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back; (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c).

In *Krupski v. Costa Crociere S. p. A.*, the Supreme Court held that the only relevant inquiry in deciding whether an amendment to a complaint to change a party benefits from the "relating-

9

back" provision of Rule 15(c) is whether "the party to be added knew or should have known" that "the action would have been brought against it" but for plaintiff's mistake. 560 U.S. 538, 541 (2010) (quoting Fed. R. Civ. P. 15(c)). The Supreme Court also noted that the preference expressed in Rule 15, and more generally in the Federal Rules of Civil Procedure, is to resolve disputes on their merits. *Id.* at 550.

The Court is satisfied that the FAC relates back to the Complaint. Here, Defendant has not shown how it would be prejudiced in defending against the merits as it was Plaintiff's employer, had knowledge of the EEOC charge and determination, the Court previously exercised its broad discretion under Rule 4(m) and extended Plaintiff's deadline to effect service on Defendant (Text Order, ECF No. 24), and Defendant waived service thereafter (Waiver of Service, ECF No. 25). *See Mehrberg v. Dep't of Com. & Econ. Opportunity*, No. 18-2032, 2019 WL 2473827, at *2-3, *4 (N.D. Ill. June 13, 2019) (finding that plaintiff's amended complaint naming the correct defendant related back to her original complaint because defendant (her employer) should have known that it would have been sued but for the mistake based on the EEOC charge, and because defendant did not "show how the [p]laintiff's mistake . . . impaired its ability to defendant itself or how it would be prejudiced in defending on the merits"). The Court thus addresses Plaintiff's claims on the merits.

### B.     Disability Discrimination Claims – Counts One and Six

Plaintiff asserts disability discrimination claims under the ADA and the NJLAD. (FAC ¶¶ 49-61, 93-105.) The ADA makes it unlawful to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). To plead a prima facie case of discrimination under the ADA, Plaintiff must adequately allege that: "'(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without

10

reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination.'"[5] *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (quoting *Gaul v. Lucent Techs.*, 134 F.3d 576, 580 (3d Cir. 1998)). Here, Plaintiff has not plead sufficient facts to plausibly allege that Defendant violated the ADA. (*See generally* FAC.)

The first prong of a discrimination claim requires Plaintiff to adequately allege that he is a disabled person within the meaning of the ADA. *Taylor*, 184 F.3d at 306. A person has a "disability" under the ADA if he has "a physical or mental impairment that substantially limits one or more major life activities," has "a record of such impairment," or was "regarded as having such an impairment." 42 U.S.C. § 12102(1). An individual is "'regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited . . . because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Id.* § 12102(3)(A). Here, Plaintiff's FAC alleges that his "herniated disk impacted the major life activities/major bodily functions of, *inter alia*, standing, lifting, and working," which satisfies the first element. (FAC ¶ 34.)

The second element of a disability discrimination claim requires Plaintiff to adequately allege that "he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer." *Taylor*, 184 F.3d at 306 (quoting *Gaul*, 134 F.3d at 580); *see also* 42 U.S.C. § 12111(8). The FAC, however, does not contain any factual allegations

---

[5] Similarly, to plead a prima facie case of disability discrimination under the NJLAD, the employee must allege that: (1) he was in the protected class; (2) he was "performing his job at a level that met his employer's legitimate expectations"; (3) he was fired; and (4) the employer then sought someone to perform the same work. *Clowes v. Terminix Int'l, Inc.*, 538 A.2d 794, 805 (N.J. 1988) (citations omitted).

regarding the essential functions of Plaintiff's former position, "Warehouse Technician," nor does Plaintiff allege that he was qualified to perform those essential functions either with or without accommodations. (*See generally* FAC.) As such, the FAC does not satisfy the second prong of a disability discrimination claim. *See Riyaz v. Integra Life Scis.*, No. 24-9861, 2025 WL 1267217, at *3 (D.N.J. May 1, 2025) (dismissing plaintiff's complaint because *inter alia* the complaint did not "contain any factual allegations regarding the essential functions of [p]laintiff's former position, let alone whether he could perform those functions with or without accommodation").

Lastly, the third requirement to state a disability discrimination claim requires Plaintiff to adequately allege that he "suffered an otherwise adverse employment decision as a result of discrimination." *Taylor*, 184 F.3d at 306 (citing *Gaul*, 134 F.3d at 580). Here, other than the allegation that Plaintiff was approved to and was working remotely in the days leading up to his firing, the FAC does not include any factual allegations that link Plaintiff's termination with his alleged disability. (*See generally* FAC.) Indeed, the FAC states that "Defendant . . . terminate[d] Plaintiff . . . for alleged misconduct." (FAC ¶ 44.) Plaintiff's additional allegations are conclusory. (*See* FAC ¶¶ 55-56 (alleging that "Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment action[,]" and "Plaintiff's disability motivated Defendant's decision to terminate Plaintiff").) Plaintiff's FAC, moreover, other than the bald assertion that "[o]thers similarly situated outside of Plaintiff's protected class were treated more favorably[,]" pleads no facts to support such an assertion. (FAC ¶ 58.) "[T]he Court, without more, cannot infer a plausible, causal connection between Plaintiff's alleged disability and the termination of his employment." *Riyaz*, 2025 WL 1267217, at *3 (citing *Gist v. Princeton Healthcare Sys.*, No. 14-6449, 2015 WL 4619518, at *3 (D.N.J. July 31, 2015).

Since Plaintiff has not pled sufficient facts to adequately allege the second or third prongs of his ADA or NJLAD discrimination claims, they are accordingly dismissed.

C. Race Discrimination – Counts Two and Seven

Plaintiff asserts race discrimination claims under both Title VII and the NJLAD. (FAC ¶¶ 62-72, 106-16.) The Court begins by noting that claims under Title VII and NJLAD "are analyzed under the same standard." *Barnes v. Off. Depot, Inc.*, No. 08-1703, 2009 WL 4133563, at *5 (D.N.J. Nov. 24, 2009) (listing cases); *see also Cortes v. Univ. of Med. & Dentistry of N.J.*, 391 F. Supp. 2d 298, 311 (3d Cir. 2005) (citing *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1212 (3d Cir. 1995) ("Title VII analysis applies to claims brought under the NJLAD . . . .").

Discrimination claims brought under Title VII and NJLAD are "controlled by the three-step burden-shifting framework set forth in *McDonell Douglas*." *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 841 (3d Cir. 2016) (citing, among others, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)). Under the *McDonnell Douglas* framework, a plaintiff first must make a prima facie case of discrimination; the burden then shifts to the defendant, who must articulate a "legitimate, . . . nondiscriminatory reason for its actions"; and finally, the burden shifts back to the plaintiff to prove that the employer's "nondiscriminatory explanation is merely a pretext for the discrimination or retaliation." *Id.* at 842.

Under this theory of discrimination, a plaintiff must allege that: (1) he is a member of a protected class; (2) he is qualified for the position; (3) he was subject to an adverse employment action; and (4) "the adverse action was taken under circumstances giving rise to an inference of discrimination." *Ewell v. NBA Props., Inc.*, 94 F. Supp. 3d 612, 620 (D.N.J. 2015) (citing *Greene v. V.I. Water & Power Auth.*, 557 F. App'x 189, 195 (3d Cir. 2014)).

Here, Plaintiff is a member of a protected class. As discussed above, however, Plaintiff fails to allege that he is qualified for the position and that he can complete the essential functions of his position with or without reasonable accommodations. Plaintiff also fails to adequately allege that the discriminatory comments were made by a supervisor or decision-maker, or that the alleged discriminatory comments influenced the decision to terminate his employment. (*See* FAC ¶¶ 23-48 (describing the comments made in March and Plaintiff's termination the last day of June following his injuries and remote work request)); *see also Dominici v. Reading Hosp./Tower Health*, No. 18-4181, 2020 WL 2898658, at *17 (E.D. Pa. June 3, 2020) (noting that "stray remarks" made temporally remote from the date of adverse employment action rarely support an inference of discrimination); *Robinson v. Mondelez Int'l, Inc.*, 228 F. Supp. 3d 448, 455 (E.D. Pa. 2017) (noting that stray comments "made outside of the context of the decision-making process" were insufficient to demonstrate discriminatory intent); *Scott v. Allied Waste Servs. of Bucks-Mont*, No. 10-105, 2010 WL 5257643, at *5 (E.D. Pa. Dec. 23, 2010), *aff'd*, 448 F. App'x 306 (3d Cir. 2011) (explaining that evidence of discriminatory comments by various co-workers and supervisors was insufficient to establish a prima facie case without "evidence tending to link these remarks to the [adverse employment] decision").

Plaintiff, moreover, only offers a conclusory statement not sufficient to allege that similarly situated employees outside his protected classes were treated more favorably. (*See* FAC ¶¶ 65, 109.) The Court accordingly dismisses Plaintiff's race discrimination claims.

D. **Religious Discrimination Claims – Counts Three and Eight**

Plaintiff asserts religious discrimination claims under both Title VII and the NJLAD. (FAC ¶¶ 73-83, 117-27.) Because the analyses for Title VII and NJLAD claims are the same, the Court will analyze the claims together. *See Cortes*, 391 F. Supp. 2d at 311 (explaining "[t]he analysis

14

which is applied in Title VII claims is equally applicable to actions brought under other civil rights statutes, and thus the Title VII analysis applies to claims brought under the NJLAD as well." (internal citation omitted)); *see also Hargrave v. County of Atlantic*, 262 F. Supp. 2d 393, 410 (D.N.J. 2003) ("As a general matter, the same basic principles apply when evaluating [a p]laintiff's claims under [Title VII and the NJLAD].").

Under Title VII and the NJLAD, employers are prohibited from discriminating against employees with respect to "compensation, terms, conditions, or privileges of employment," based on religion. 42 U.S.C. § 2000e-2(a)(1); N.J. Stat. Ann. § 10:5-12(a). Title VII and the NJLAD further forbid employers from failing to reasonably accommodate an employee's sincerely held religious beliefs. N.J. Stat. Ann. § 10:5-12(q)(1); *see also Fallon v. Mercy Cath. Med. Ctr.*, 877 F.3d 487, 490 (3d Cir. 2017) (citing 42 U.S.C. § 2000e(j)). To plead a prima facie case of religious discrimination, a plaintiff must adequately allege that: "(1) he held a sincere religious belief that conflicted with a job requirement, (2) he informed his employer of the conflict, and (3) he was disciplined for failing to comply with the conflicting requirement." *Fallon*, 877 F.3d at 490 (citing *Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 224 (3d Cir. 2000)).

Here, Plaintiff has adequately alleged a sincere religious belief. (FAC ¶ 20.) Plaintiff, however, failed to sufficiently plead that: (1) his sincerely held religious belief conflicted with a job requirement; (2) he informed Defendant that such a conflict existed; or (3) he was disciplined for failing to comply with such a requirement. (*See generally* FAC.) Plaintiff also failed to sufficiently plead that his termination was related to his sincerely held religious belief. (*See generally id.*) Plaintiff has failed to allege sufficient facts to plead claims for religious discrimination, thus the Court dismisses them.

E.  **Retaliation Claims – Counts Four, Five, and Nine**

Plaintiff also brings retaliation claims under Title VII, the ADA, and the NJLAD. (FAC ¶¶ 84-92, 128-32.) Title VII makes it unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a); *see also Lombard v. N.J. Dep't of Transp.*, No. 18-1319, 2018 WL 5617553, at *7 (D.N.J. Oct. 30, 2018). To plead a claim for retaliation under Title VII, a Plaintiff must allege that: "(1) he was engaged in protected activity; (2) he was [subject to an adverse job action] subsequent to or contemporaneously with such activity; and (3) there is a causal link between the protected activity and the [subsequent adverse job action]." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 800 (3d Cir. 2003) (alterations in original).

Similar to Plaintiff's race discrimination claims, Plaintiff's retaliation claims under the ADA and NJLAD are analyzed under the *McDonnell Douglas* framework and require similar elements. *See Jakomas v. City of Pittsburgh*, 342 F. Supp. 3d 632, 653 (W.D. Pa. 2018) ("retaliation claims under the ADA are analyzed under the *McDonnell Douglas* framework"); *see also Logan v. Millstone Manor LLC*, No. 20-14433, 2022 WL 1720172, at *8 (quoting *Puchakjian v. Township of Winslow*, 804 F. Supp. 2d 288, 304 (D.N.J. 2011) ("Under the NJLAD, retaliation claims are analyzed following the 'well-established burden shifting framework of McDonnell Douglas.'"). To plead a prima facie case of disability-accommodation retaliation under the ADA, a plaintiff must allege: (1) that he engaged in a protected activity in the form of requesting disability accommodations; (2) that the employer subjected him to an adverse employment action; and (3) a causal connection exists between the protected activity and the challenged adverse action. *Ruggiero v. Mount Nittany Med. Ctr.*, 736 F. App'x 35, 41 (3d Cir. 2018).

16

To demonstrate the third element of a prima facie case for retaliation claims, a plaintiff must adequately allege facts sufficient to "show a 'causal link' link between h[is] accommodation request and his termination." *Reyes v. WHG Payroll Inc.*, No. 22-3828, 2025 WL 1638515, at *6 (E.D. Pa. June 6, 2025) (citing *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007)). "Generally, an employee demonstrates retaliatory animus by showing either an unusually suggestive temporal proximity between the employee's protected activity and the employer's adverse action, or a pattern of antagonism in the period between the protected activity and the adverse action." *Mammen v. Thomas Jefferson Univ.*, 523 F. Supp. 3d 702, 717 (E.D. Pa. 2021) (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (parenthetical omitted)). And "'temporal proximity between the protected activity and the termination [can be itself] sufficient to establish a causal link.'" *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (quoting *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003)), *superseded by statute on other grounds as recognized in Robinson v. First State Cmty. Action Agency*, 920 F.3d 182, 188 n. 30 (3d Cir. 2019*)*. For temporal proximity to be sufficient on its own, "the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred." *Id.*

Here Plaintiff's claims fail to adequately allege a prima facie case of retaliation under Title VII, the ADA, or the NJLAD. Plaintiff's FAC contains largely conclusory allegations as to Defendant's alleged retaliation. (*See generally* FAC.) Regarding his Title VII claim, Plaintiff fails to plead sufficient facts to show a causal connection between his alleged protected activity, making a complaint about the discriminatory comments, and his firing. (*See* FAC ¶¶ 19-48, 89-92.) As discussed above, Plaintiff did not adequately plead that he was a qualified individual under the ADA or the NJLAD, and thus, for those reasons, his retaliation claims also fail and are dismissed.

IV. **CONCLUSION**

For the reasons set forth herein, Defendant's Motion to Dismiss is granted, and the FAC is dismissed without prejudice. The Court will issue an Order consistent with this Memorandum Opinion.

Dated: 10/9/2025

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE